DELLOUISE GREENE, a single woman, *Appellant,* v. JAS. T. MILLER and wife, MAYME MILLER, *Appellees.*

136 So. 532.

En Banc.

Opinion filed August 6, 1931.

Petition for rehearing denied September 14, 1931.

768

R. H. *Amidon* and *Peterson, Carver, Langston & O'Quin,*
for Appellant;

*Wilson & Boswell,* for Appellees.

BUFORD, C.J.—In this case amended declaration was filed in two counts. The second count of the declaration states no stronger or different case against the defendants than that stated in the first count; but, as the second count goes more into detail in stating the cause of action against the defendants we quote that part of the second count which alleges the manner and cause of the injury to plaintiff, which was as follows:

"That on or about the 4th day of August, A. D. 1928, a certain Lincoln roadster being then and there the property of the defendant Mayme Miller who is the wife of the defendant Jas. T. Miller, while being driven along a certain road in Polk County, Florida, and near the Town of Lake Hamilton by J. C. Miller, the adult son of the defendants, was so carelessly and negligently driven and operated that it left the highway, crashed into some trees growing nearby and permanently injured plaintiff who was then and there riding in said automobile in company with the said J. C. Miller and at his invitation and request; that the said car belonging to and property of the defendant Mayme Miller was by her allowed to be used and treated as the car of her son J. C. Miller, and had been since the date of its purchase by her; That the plaintiff was an intimate friend of the Miller family, was well known to the defendants and often in their home; That she had been keeping company with the said J. C. Miller for some time prior to the date of the accident and the fact that the said J. C. Miller was accustomed to take her riding in this machine was well known to the defendant Mayme Miller, who at all times acquiesed in and consented to the use of her car by the said J. C. Miller for this purpose; That at the time of the aforesaid accident it had been misting lightly and the road on which same occurred, being an unpaved one with high clay content, was very

slippery and dangerous, all of which was well known to the said J. C. Miller who had lived in that section for years and was familiar with that particular stretch of highway.

That shortly after coming on the unpaved road the driver of the machine, having driven theretofore at a moderate rate of speed began without any warning to drive at a terrific pace, so much that plaintiff became greatly alarmed and remonstrated with him insisting that he slow down and doing everything in her power to compel him to do so, but all to no avail;''

It is not necessary for us to quote that part of the declaration which described the nature and extent of the injury.

Demurrers were filed by both defendants to both counts of the declaration. Both demurrers were sustained and the plaintiffs refusing to plead further, judgment was entered in favor of the defendants. To this judgment writ of error was sued out.

Three questions are presented in this case. They are as follows:.

''1. Is the owner of an automobile liable for damages to a person who was riding therein at the express invitation of the owner's adult son, and who was injured by the negligent operation thereof by said son, the automobile being used at the time with the full knowledge, acquiescence and consent of the said owner?''

''2. Is a married woman whose disabilities have not been removed liable for her pure torts?''

''3. Is a husband liable for the torts of his wife?''

The first question involves two aspects, the first of which is: Is the owner of an automobile liable for damages which are occasioned by the negligent operation of the automobile on the public highways by a person, not the owner, but who is operating the automobile on the public highways with the knowledge and consent of the owner. The other is; Whether or not the liability of such owner extends to a person who is riding in such automobile as the invited guest of the person who is operating the same with the

knowledge and consent of the owner. These questions must be answered in the affirmative, as must also the second and third questions above stated.

In Herr v. Butler, et al, filed March 12, 1931, reported 132 Sou. 815, it was held:

"A motor vehicle operated on the public highways is a dangerous instrumentality and the owner who intrusts it to another to operate is liable for injury caused to others by the negligence of the person to whom it is intrusted. * * * * *

An automobile operated upon the public highway being a dangerous machine, its owner is responsible for the manner in which it is used and his liability extends to its use by anyone with his knowledge or consent.

'The Legislature, under its police power to protect the public from dangerous instrumentalities using the highways, has imposed rigid restraints, regulations and restrictions upon the use of motor vehicles, thus recognizing the danger from their operation, which makes owners liable in damages under the doctrine of respondeat superior as applied to dangerous agencies.

Chapter 7275, Acts 1917, treats the automobile when operated on the public highways as a dangerous instrumentality, so as to require special regulation and control under the police power, and it is not divested of its dangerous character in an action for damages caused by the negligence of the operator, who is using the car with the owner's knowledge or consent,"

which was a reiteration of what had been held by this Court in the case of Southern Cotton Oil Co. vs. Anderson, 80 Fla. 441, 86 Sou. 629, 16 A. L. R. 255, and it was also said by Mr. Justice Davis in an opinion concurred in by a majority of the Court:

"Furthermore the statutes of Florida provide for licensing automobiles in the name of the owner, or their operation only by the owner or under his authority in the case of nonresidents, and no one has the right to use an automobile on the highways of the State except pursuant to the license which the owner derives from the State to operate that particular car over the highways. Consequently the operator in lawful possession of the

car with the consent of the owner in effect operates the car under the authority of the owner's license to use the highways pursuant to Florida statute law, as well as for the benefit of such owner whose agent the operator is, at least to the extent of properly controlling the car, looking after it, preventing damage to it and returning it safely back to such owner who intrusted it.''

''Such being the nature of the relationship and the automobile being an instrumentality dangerous at least in its operation (2 Mechem on Agency, 2d Ed., pars. 1945, 1946), I think the original Anderson case was properly decided and should not be now overruled.''

In the case of Engleman vs. Traeger, filed at this term of the Court, it is said:

''The evidence sustains the theory that the fatal injury was due to the negligent operation of the said motor car by Arthur Williams, and fails to show contributory negligence on the part of Whitney Engleman. It is the contention of the defendants that the driver of the automobile was not at the time of the accident using the machine as the agent or servant of the defendants, but at most Williams was merely a bailee. Upon the theory that a bailor of an automobile, even though such automobile is a dangerous instrumentality, is not liable for a tort committed by a bailee in the use of such instrumentality, the lower court granted a new trial.

But the alleged bailment is not such as was involved in White vs. Holmes, 89 Fla. 251, 103 Sou. 623, where this Court held that where one keeps an automobile for hire, and in the usual course of business, hires the automobile without driver to another, who in operating the car injures a third person, the owner of the car is not liable for damages to the injured party for the negligent operation. Such bailments as were referred to and specially dealt with in that case are expressly permitted by the automobile license laws of the State. The controlling statute contemplates that special licenses may be issued under which cars can be hired to another under such circumstances as to divest the owner of all control and consequent responsibility for negligent operation, in the case of these particular bailments.

As has been several times pointed out, the only way in which an automobile can be lawfully operated on the

highways of the State of Florida is under a State license and bearing a State license tag which can only be issued to the *owner* of the car. See Section 1280 C. G. L., et seq., 1006 R. G. S., et seq.

And, further, in the same opinion, it is held:

"The other earlier cases of Eppinger & Russell Co. v. Trembly, 90 Fla. 145, 106 So. 879, as well as Southern Cotton Oil Co. v. Anderson, 73 Fla. 432, 74 So. 975, L. R. A. 1917-E 715; also 80 Fla. 441, 86 So. 629, 16 A. L. R. 255, have all consistently followed and applied the rule of 'respondeat superior' in upholding the liability of the owner of an automobile for negligent injuries inflicted by one who operates it with his permission, knowledge or consent.

But the rules of 'respondeat superior' has necessarily a broader application to a case where the owner of an automobile, which can only be lawfully operated on the public highways of the State under a special license and bearing a conspicuous identifying tag, entrusts it to another to operate under such owner's license and tag, than to an instance where the owner of a horse and buggy, or a hammer or wheel-barrow (none of which have been declared subject to a special statutory regulation as to use), entrusts such horse and buggy, hammer or wheel-barrow to another to use or operate."

And, again, in the same opinion, it is said:

"The only effect our holdings have is to recognize that insofar as the operation of an automobile on the highways is concerned, that the owner stands always, *as a matter of law*, in the relation of 'superior' to those whom he voluntarily permits to use his license and to operate his automobile on the highways under it or those whom he allows to do so with his knowledge and consent. Like all cases of this kind, there is an exception, as we have pointed out. Such exception has been recognized in the particular case where the statute expressly permitted a bailment for hire, under which the bailee was allowed to procure and operate a hired car as if he were the owner. Under this exception all liability was transferred to him which would thus have attended his actual ownership if it had existed.

So it is on the principle of *'respondeat superior'* that the owner of an automobile must answer for the negli-

gence of those who operate his automobile under his license, with his knowledge, or consent, express or implied. In view of our regulatory laws, an automobile owner will not be permitted to refute the relationship which is implied in law when it appears that such automobile owner has permitted, with his knowledge and consent, another's operation of such automobile on the highways which only the owner, as owner, or some one acting for him, may lawfully do.''

The liability of the owner of an automobile to an invited guest riding in such automobile caused by the negligent operation of the automobile has been recognized in this State in the case of Boyle vs. Dolan, 97 Fla. 253, 120 Sou. 334, wherein this Court by Per Curiam Order reversed the judgment on demurrer sustained, and said:

"This writ of error was taken to a judgment for the defendant upon demurrer sustained to a declaration which alleges that the defendant invited the plaintiff to drive with him in his automobile; that plaintiff accepted his invitation; that defendant driving said automobile at a reckless and careless and dangerous rate of speed over plaintiff's repeated objections and request to drive a careful and prudent rate of speed, negligently and carelessly lost control of said automobile, and negligently and carelessly collided with another automobile. 'Because of defendant's recklessness, carelessness and negligence in the aforesaid collision' plaintiff was injured, etc. The above and other pertinent allegations do not wholly fail to state a cause of action, therefore the demurrer to the declaration should have been overruled. See Carlton vs. F. E. C. Ry. Co., 95 Fla. 596, 116 So. R. 870; Yon v. Pinellas County Power Co., 93 Fla. 503, 112 So. R. 50, and authorities cited.''

The rule prevailing in most jurisdictions is that,

"A motorist or owner of a motor vehicle, not a common carrier, who voluntarily undertakes to transport another, having no control of the operation of the vehicle, is liable for injuries to the person so transported, resulting from the negligence, or in some jurisdictions from the gross negligence of the driver, or the negligence of the driver and a third person, and to which injury the negligence of the guest or person so transported has not

contributed, whether the transportation service is for compensation or is gratuitous, and whether the motorist or owner undertakes to operate the machine personally or through a servant or agent.'' Cyc. of Automobile Law. Blashfield, Vol. 1, page 955; Lowell vs. Williams, 170 N. Y. Sup. 596; Galloway vs. Perkins, 198 Ala. 658, 73 Sou. 956; Powell vs. Berry, 145 Ga. 696, 89 S. E. 753; Rogers vs. Price, 117 Kan. 181, 230 Pac. 1047.

See also, Kennedy vs. R. & L. Co., 112 N. E. 872, 224 Mass. 702; Spring vs. McKay, 53 Cal. Ap. 330; 200 Pac. 41; Harris vs. Reid, 117 S. E. 256, 30 Ga. Ap. 187; Flynn vs. Lewis, 231 Mass. 550, 121 N. E. 493; Graban vs. Pudwill, 45 N. Dak. 423, 178 N. W. 124; Munson vs. Rupker, 148 N. E. 169. Garner vs. Baker, 214 Ala. 385, 108 Sou. 38; Rush vs. McDonals, 214 Ala. 47, 106 Sou. 175; Dickenson vs. Conn. Co., 98 Conn. 87, 118 Atl. 518; Lasley vs. Crawford, 228 Ill. Ap. 590; Avery vs. Thompson, 117 Me. 120, 103 Atl. 4; Great Sou. Lbr. Co. vs. Hamilton, 137 Miss. 55, 101 Sou. 787; Royal Indemnity Co. vs. Platt & Washburn Refining Co., 98 Misc. 631, 163 N. Y. Sup. 197; Bluck vs. Bradford Cleaning & Dyeing Co., 186 N. Y. Sup. 823.

The cause of action here is a pure tort. It having been determined that the owner of an automobile generally is liable for such a tort, we are asked to determine whether or not a married woman whose disabilities have not been removed is nevertheless liable for such a tort. In the case of Prentiss et ux. vs. Paisley et al., 25 Fla. 927, 7 Sou. 56, it was held:

''A married woman is personally liable for her wrongful civil acts, or actual torts, including frauds not growing out of or founded upon or directly connected with or a part of, or the means of effecting a contract which she has undertaken to make; and she may be sued jointly with her husband in respect to such acts, or separately if she survives him. His liability for her torts is a result of the mere fact that by the common law rules a suit cannot be maintained against the wife alone during coverture.''

In Meeks vs. Johnston, et ux., 85 Fla. 248, 95 Sou. 670, it was said:

"At common law a married woman was, as a general rule, liable civilly for her pure torts, not committed under the coercion of her husband, and not growing out of or founded on, or directly connected with, or a part of, or the means of effecting, a contract which she has undertaken to make; and she could be sued jointly with her husband in respect to such acts, or separably if she survived him. 13 R. C. L. 255, p. 1220.

It was the general rule of common law that a husband was civilly liable for his wife's wrongful acts committed during coverture. This liability of the husband was settled from an early date and, while various reasons therefor have been given, its original foundation is not clear, but it seems that it cannot be said to have been rested on the fact that her husband could take all the wife's personal property and her earnings and could control her person, or that she had no estate from which a judgment against her could be satisfied, added to the supposed merger of her legal personality in his. Some of the cases state that it is because the husband, at common law, had the power of correcting his wife, and that he was therefore responsible for her conduct; others that, as he had the control of her property, he should be answerable for her wrongs; still others, as she could not be sued alone, the injured party would be without redress, unless the husband were held liable with her, and this latter appears to be the theory most frequently advanced. 13 R. C. L. #264, p. 1229; Minor v. Mapes, 102 Ark. 351, 144 S. W. 219, 39 L. R. A., (N. S.) 214."

On authority of the cases above cited, we hold that injury to another by the negligent operation of an automobile is a pure tort; that a husband is liable for the pure torts of his wife; that a married woman whose disabilities have not been removed is liable for her pure torts and she and her husband may be sued jointly to recover damages for same; that the owner of an automobile is liable for damages resulting from the negligent operation of such automobile on the highways by a person who is operating such automobile on the highways with the knowledge and consent of the owner, provided the person injured by such negligent operation of such automobile is not at the time guilty of contribu-

tory negligence, and that the liability of such owner extends to a person riding in such automobile as the invited guest of the person operating the same, provided such invited guest is not so riding in such automobile over the objection of, or against the orders or directions of the owner and is free from contributory negligence.

For the reasons stated, the order sustaining the demurrer constituted error and the judgment should be reversed. It is so ordered.

Reversed.

WHITFIELD, ELLIS AND DAVIS, J.J., concur.

TERRELL AND BROWN, J.J., dissent.