Chester A. KUKLIS and Jean S. Kuklis, Plaintiffs,

v.

James H. HANCOCK, individually and as next friend of Lance Hancock, a minor, Kathryn F. Hancock, and Lance Hancock, Defendants.

No. 65–590–Civ–CA.

United States District Court
S. D. Florida,
Miami Division.

June 27, 1969.

Sanford M. Swerdlin, Clewiston, Fla., for plaintiffs.

E. S. Corlett, III, of Sherouse & Corlett, Miami, Fla., for defendants.

## Amended Memorandum Opinion

ATKINS, District Judge.

This is a non-jury action for wrongful death to a guest passenger arising out of an automobile accident. The facts are not in substantial dispute. Inferences to be drawn from those facts, and in one instance whether an "inference upon an inference" can be drawn, are the heart of the problems incident to the resolution of the issues.

The plaintiffs are the surviving parents, entitled to bring this action for damages under § 768.03, Florida Statutes, 1967, F.S.A., for the death of their son, Dennis. By stipulation, Florida law controls in every aspect.

On August 14, 1963, a Ford Taunus was being driven by defendant Lance Hancock with the implied consent of his father and the owner, defendant James H. Hancock. While rounding a shallow curve to the right on a highway in Germany between 8:20 p. m. and 8:30 p. m., the car left the road after crossing over to the opposite side. It proceeded 154.38 feet on the left (opposite) shoulder, struck a tree, and came to a rest 14.8 feet away. The car was found lying on its right side. The vehicle was described by Police Inspector Fuchs as "totally wrecked." The defendant Lance Hancock was injured and the passenger Dennis Kuklis was killed instantly. Both were sons of U.S. Air Force personnel stationed in Germany.

The left front tire of the automobile was nearly bald. The right front and the other two tires contained substantial tread.

When inspector Fuchs arrived at the scene he found a strong odor of alcohol in the automobile. There were also two broken bottles, one square and one round. No beer bottles or beer cartons were found.[1] Inspector Fuchs ordered a blood alcohol test of the defendant-driver, Lance Hancock.

■ Dr. Bernard Wink was the first medical officer to reach the scene. As a result of his observation of Lance Hancock at the scene and in the ambulance during the trip to the hospital he likewise ordered a blood alcohol test. This was done at the base hospital that night at about 10:45 p. m. The test showed 1.6 miligrams of alcohol. This is an equivalent to .16% by weight. Therefore there was an excess of 7 ounces of 100 proof alcohol in the blood at the time of the test. According to drunkometer expert, Nat Lawrence, alcohol is burned up at the rate of ⅔ of an ounce to one ounce per hour. This indicates that at least 8¾ ounces of 100 proof alcohol were in the blood of the defendant driver at the time of the accident.

The presence of 0.10 percent by weight of alcohol in the blood of a person creates a presumption that such "person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired." § 322.262(2) (c), Florida Statutes, 1967, F.S.A. There is sufficient evidence to find that the normal faculties of defendant Lance Hancock were impaired at the time of the accident.

---

1. The defendant James H. Hancock testified that there was a case of beer in the car that evening which his wife had placed there.

Dr. Wink examined the deceased at the scene and found him dead. He signed the death certificate. (Plaintiffs' Exhibit 4). On the basis of his on-the-scene examination of the deceased's body, including a close examination of his airways while seeking vital signs, Dr. Wink directed that Dennis' medical records recite there was no evidence of alcohol in the body of the deceased.

The defendant Lance Hancock is the only witness to the consumption of alcohol by his passenger and himself on August 14, 1963. He testified that Dennis and he drank two or three beers between two and three o'clock that afternoon at a combination restaurant and beer house. They also drank two beers each at a similar place that evening between 7:30 and 8:15. At that time they left to return to their homes on the post.

The parents of both boys testified no odor of alcohol was detected when they ate dinner at their respective homes around 6:30 that evening. Lance and Dennis met at a teenage club known as The American Youth Association around 6:45 p. m. where they remained an hour to an hour and a half. Sgt. Thornburg, director of the Club, testified he did not detect the odor of alcohol on either of them while there that evening and both were in full possession of their faculties.

■ Defendants objected to the admission of the blood alcohol test on the ground that there was no showing of the manner and method of analyzing the alcohol content, whether skin and needle were free of alcohol and that there were other possible impediments in preserving the chain of evidence. The procedures were detailed sufficiently to assure credibility of the test.

The report of the blood alcohol test was a part of the original hospital records of Lance Hancock. This was confirmed by the Commanding Officer of the 36th Tactical Hospital to which Lance Hancock was admitted and where that test was performed. Colonel Giles J. Strub, the Commanding Officer of the hospital, identified the blood alcohol test report as a true copy of the original.

He confirmed that the laboratory procedures and results were made under his direction, supervision and control. Under his administration, the Nurses Notes, which are a part of Lance Hancock's medical records (Plaintiffs' Exhibit 7), accurately reflected the occurrences during the course of Lance Hancock's hospitalization.

Colonel Walter D. Bell, the Air Base Group Commander at Spangdhalem, when presented with a copy of the blood alcohol laboratory report, identified the copy as a true copy and confirmed that the original was or should be in the Repository at St. Louis, Missouri.

Upon inspecting the scene of the accident, Inspector Fuchs noted that there were no skid marks indicating that the brakes were never applied. The defendant, Lance Hancock, testified that he had no independent recollection of the events leading up to the crash other than a mental image of the tree just before it was struck and the speedometer which he stated was registering 80 kilometers (50 miles per hour).

The pictures (Plaintiffs' Exhibit 2) and the diagrams (Plaintiffs' Exhibits 1 and 3) show large parts of the vehicle were scattered over the area of the accident, thus indicating the high speed of the vehicle or a failure to take any diversionary steps after his vehicle crossed over to the other side of the highway. The position of these scattered parts show a great force of impact.

The defendant, James H. Hancock, testified that his wife, Kathryn Hancock, had complained to him about the defective left front tire and that their car was difficult to steer and developed a shimmy at a speed of fifty miles an hour.

■ The ingredient of impaired faculties because of drinking alcoholic beverages, mixed with the negligent operation of the vehicle, constitutes gross negligence under the law of Florida. Welch v. Moothart, 89 So.2d 485 (Fla., 1956). The evidence compels the Court to the conclusion that the defendant Lance Hancock was guilty of gross negli-

gence under § 320.59 Florida Statutes, 1967, F.S.A., in that he was driving an automobile at an excessive rate of speed or failed to reduce his speed or take any steps to avoid the collision while under the influence of intoxicating beverages. The father, James H. Hancock, as owner of the automobile, is equally liable for the negligence of the driver. Greene v. Miller, 102 Fla. 767, 136 So. 532 (1931).

 The burden of proving contributory negligence or assumption of risk, both asserted to bar recovery, is upon the defendants. Proof of these defenses can come, however, from any evidence, regardless of who offers it. Premium Candies Incorporated v. Flowers, 372 F.2d 474 (5th Cir., 1967).

Defendants contend that if the blood alcohol test is accepted and its consequent presumption of being under the influence of intoxicating beverages, we must infer that Dennis was aware of the quantity of alcohol consumed and the resulting effect. Thus aware, they assert Dennis assumed the risk and may not recover. Loftin v. Bryan, 63 So.2d 310 (Fla., 1953).

Each of these involves an inference that is not justified from the evidence. Additionally, to infer the quantity consumed would have an apparent effect on Lance and that Dennis, per force, would have observed it, imposes an inference upon an inference. This cannot be done.

The Court finds that the deceased, Dennis A. Kuklis, was not guilty of contributory negligence and did not assume the risk. There is nothing to suggest that Dennis knew or reasonably should have known from the condition and behavior of Lance Hancock that Lance was not exercising that degree of care necessary to the deceased's safety.

The remaining question is that of damages. The damages recoverable are fixed by § 768.03, Florida Statutes, 1967, F.S.A. Counsel have agreed that the only recoverable item is for the pain and suffering of the parents. The period of recovery is the average life expectancy of the plaintiff parents. Georgia South-

ern & Florida RR Co. v. Perry, 326 F.2d 921 (5th Cir., 1964).

Here the average life expectancy of each plaintiff is thirty years, one hundred and forty-nine days. The plaintiff husband was discharged from military service with a thirty per cent permanent disability because of arteriosclerosis and angina pectoris.

The deceased was a bright, seventeen year old boy with special qualities of character, leadership and integrity as well as exceptional scholastic standing and athletic ability. All of this was evidenced by newspaper clippings (Plaintiffs' Exhibits 12 and 13), testimony of Sgt. Thornburg, and a laudatory letter of a member of Congress giving great expectation of an appointment to a service academy of the United States (Plaintiffs' Exhibit 14). The mother, especially, was greatly disturbed.

I find that plaintiffs are entitled to, and accordingly I award the sum of, $30,000 as damages.